**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **IN RE VERISOURCE SERVICES, INC., DATA BREACH LITIGATION** | Case No. 4:24-CV-03492<br><br>HON. JUDGE CHARLES ESKRIDGE<br><br>MAGISTRATE JUDGE CHRISTINA A. BRYAN |

**PLAINTIFFS' RESPONSE IN OPPOSITION**
**TO DEFENDANTS SOUTHWEST WATER COMPANY, LLC**
**AND PLANNED ADMINISTRATORS, INC.'S MOTION TO DISMISS**

i

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND ........................................................................... 1

    A.    Defendants Collect Private Information. ............................................... 1

    B.    Defendants Breached Duties Owed to Plaintiffs and the Class. ..................... 2

    C.    Plaintiffs' Injuries are Substantial. ....................................................... 3

III.  LEGAL STANDARD ..................................................................................... 7

IV.   ARGUMENT .................................................................................................. 8

    A.    Plaintiffs' Claims are Not Subject to Dismissal Under Rule 12(b)(1). ............. 8

      1.    Plaintiffs Allege Numerous Concrete Injuries. ................................. 8

      2.    Plaintiffs' Injuries are Traceable to Defendants. ............................ 12

      3.    Plaintiffs' Injuries are Redressable. ................................................ 13

    B.    Plaintiffs' Claims are Not Subject to Dismissal Under Rule 12(b)(6). ........... 13

      1.    Plaintiffs' Negligence, Negligence Per Se, and Negligent Hiring Claim is Sound. ................................................................................. 13

        i.    Defendants had a Common Law Duty to Ensure Plaintiffs' Private Information was Protected Against Foreseeable Threats. ........................ 13

        ii.    The Scope of Defendants' Duty to Safeguard Private Information is Defined, in part, by HIPAA and the FTC Act. .......................................... 15

        iii.    Defendants had a Duty to Ensure VSI Implemented Reasonable Data Security. ................................................................................................ 16

        iv.    Plaintiffs Allege Proximate Causation. ....................................................... 18

v.    The Economic Loss Doctrine Does Not Bar Plaintiffs' Claims. .............. 19

2.    Plaintiffs Allege Cognizable Damages. ........................................... 20

3.    Plaintiffs State a Claim for Breach of Implied Contract. ............................. 23

4.    Plaintiffs State a Claim for Unjust Enrichment. .............................................. 25

5.    Plaintiffs State a Claim for Declaratory Judgment. ........................................ 26

6.    Plaintiffs' Request for Punitive Damages is Proper. ....................................... 27

C.    Plaintiffs Should be Granted Leave to Amend. ................................................. 27

V.    CONCLUSION ............................................................................................................. 28

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009)............................................................................................... 8

*Barton v. Whataburger, Inc.*,

276 S.W.3d 456 (Tex. App. 2008)........................................................................ 14

*Baton v. Ledger SAS*,

740 F. Supp. 3d 847 (N.D. Cal. 2024) .................................................................. 19

*Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007)............................................................................................... 8

*Billings v. Atkinson*,

489 S.W.2d 858 (Tex. 1973)................................................................................. 22

*Bohnak v. Marsh & McLennan Companies, Inc.*,

79 F.4th 276 (2d Cir. 2023) ........................................................................... 10, 22

*Bruce Foods Corp. v. Tex. Gas Serv.*,

EP-13-CV-231-KC, 2014 WL 652312 (W. D. Tex. Feb. 19, 2014) .............................. 19

*Bruno v. Donohoe as Tr. of Texas Med. Liab. Tr.*,

754 F. Supp. 3d 737 (W.D. Tex. 2024) .................................................................. 8

*Buxani v. Nussbaum*,

940 S.W.2d 350 (Tex. App.—San Antonio 1997, no writ). .................................... 23, 24

*Cabezas v. Mr. Cooper Grp. Inc.*,

No. 3:23-CV-2453-N, 2025 WL 2053287 (N.D. Tex. July 22, 2025) .......... 9, 11, 12, 19

iv

*Carr v. Oklahoma Student Loan Auth.*,

No. CIV-23-99-R, 2023 WL 6929850 (W.D. Okla. Oct. 19, 2023)............................ 17

*Castillo v. Berry Bros Gen. Contractors Inc.*,

No. 6:24-CV-01723, 2025 WL 1062091 (W.D. La. Apr. 8, 2025) .............................. 26

*Clapper v. Amnesty Int'l USA*,

568 U.S. 398 (2013)..................................................................................................7

*Cuvillier v. Taylor*,

503 F.3d 397 (5th Cir. 2007) .....................................................................................8

*Dieffenbach v. Barnes & Noble, Inc.*,

887 F.3d 826 (7th Cir. 2018) ...................................................................................20

*Duffy v. Lewis Bros. Bakeries, Inc.*,

760 F. Supp. 3d 704 (S.D. Ind. 2024)........................................................................ 10

*Farmer v. Humana, Inc.*,

582 F. Supp. 3d 1176 (M.D. Fla. 2022)...................................................................... 18

*Fearrington v. Bos. Sci. Corp.*,

410 F. Supp. 3d 794 (S.D. Tex. 2019)........................................................................27

*Forrest v. Vital Earth Res.*,

120 S.W.3d 480 (Tex. App. 2003)............................................................................. 18

*Hackett v. G.D. Searle & Co.*,

246 F. Supp. 2d 591 (W.D. Tex. 2002) ......................................................................15

*Haney v. Charter Foods N., LLC*,

747 F. Supp. 3d 1093 (E.D. Tenn. 2024).................................................................... 14

v

*Hawkins v. Scout Energy Mgmt., LLC,*

No. 3:24-CV-01545-N, 2025 WL 2244327 (N.D. Tex. Aug. 5, 2025) .................. passim

*Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.,*

480 S.W.2d 607 (Tex. 1972) .......................................................................................... 23

*Hayes v. Locke Supply Co.,*

724 F. Supp. 3d 609 (E.D. Tex. 2024) .......................................................................... 19

*Hays v. Frost & Sullivan, Inc.,*

2024 WL 4052741 (W.D. Tex. 2024) ................................................................ 9, 21, 26

*Holcombe v. United States,*

388 F. Supp. 3d 777 (W.D. Tex. 2019) ........................................................................ 15

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.,*

2021 WL 5937742 (D.N.J. Dec. 16, 2021) ................................................................... 17

*In re Cap. One Consumer Data Sec. Breach Litig.,*

488 F. Supp. 3d 374 (E.D. Va. 2020) ........................................................................... 26

*In re ESO Sols., Inc. Breach Litig.,*

No. 1:23-CV-1557-RP, 2024 WL 4456703 (W.D. Tex. July 30, 2024) ..... 14, 15, 18, 22

*In re Katrina Canal Breaches Litig.,*

495 F.3d 191 (5th Cir. 2007) .......................................................................................... 7

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,*

440 F. Supp. 3d 447 (D. Md. 2020) ......................................................................... 23, 24

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,*

603 F. Supp. 3d 1183 (S.D. Fla. 2022) ................................................................... 20, 23

*In re Michaels Stores Pin Pad Litig.*,

    830 F.Supp.2d 518 (N.D. Ill. 2011) ...........................................................................24

*In re Unite Here Data Sec. Incident Litig.*,

    740 F. Supp. 3d 364 (S.D.N.Y. 2024) ........................................................................26

*In re Waste Mgmt. Data Breach Litig.*,

    No. 21cv6147, 2022 WL 561734 (S.D.N.Y. Feb. 24, 2022)........................................24

*Johnson v. Sawyer*,

    47 F.3d 716 (5th Cir. 1995) .......................................................................................15

*Logan v. Marker Grp., Inc.*,

    No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) .........................8, 24

*Louisiana v. Centers for Disease Control & Prevention*,

    No. 6:22-CV-00885, 2022 WL 1604901 (W.D. La. May 20, 2022) ..............................7

*Lujan v. Defs. of Wildlife*,

    504 U.S. 555 (1992).....................................................................................................7

*McMorris v. Carlos Lopez & Assocs.*,

    995 F.3d 295 (2d Cir. 2021) ....................................................................................9, 21

*Mendez v. Caterpillar Inc.*,

    No. SA-09-CA-978-XR, 2011 WL 6999659 (W.D. Tex. Dec. 16, 2011).....................13

*Merrell v. 1st Lake Props., Inc.*,

    717 F. Supp. 3d 512 (E.D. La. 2024)..........................................................................15

*Morris v. JTM Materials, Inc.*,

    78 S.W.3d 28 (Tex. App. 2002)..............................................................................16, 17

vii

*Oliphant Fin., LLC v. Galaviz*,

   299 S.W.3d 829 (Tex. App.—Dallas 2009, no pet.) ....................................................23

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,

   45 F.4th 816 (5th Cir. 2022) ......................................................................................22

*Perlaki v. J.B. Poindexter & Co.*,

   No. 4:24-CV-01649, 2025 WL 754503 (S.D. Tex. Mar. 10, 2025) ..........................9, 11

*Perrill v. Equifax Info. Servs., LLC*,

   205 F. Supp. 3d 869 (W.D. Tex. 2016) .......................................................................22

*Perry v. Bay & Bay Transportation Servs., Inc.*,

   650 F. Supp. 3d 743 (D. Minn. 2023)..........................................................................24

*Phan Son Van v. Pena*,

   990 S.W.2d 751 (Tex. 1999)........................................................................................14

*Shakeri v. ADT Sec. Servs., Inc.*,

   816 F.3d 283 (5th Cir. 2016) ......................................................................................20

*Smallman v. MGM Resorts Intl.*,

   638 F. Supp. 3d 1175 (D. Nev. 2022)..........................................................................23

*Smith v. Am. Pain & Wellness, PLLC*,

   747 F. Supp. 3d 989 (E.D. Tex. 2024)....................................................................passim

*Smith v. EMC Corp.*,

   393 F.3d 590 (5th Cir. 2004) ......................................................................................27

*TransUnion LLC v. Ramirez*,

   594 U.S. 413 (2021)....................................................................................................10

*Turner v. Pleasant,*

    663 F.3d 770 (5th Cir. 2011) ........................................................................................8

*Washington v. U.S. Dep't of Hous. & Urb. Dev.,*

    953 F. Supp. 762 (N.D. Tex. 1996) ..............................................................................14

*Webb v. Injured Workers Pharmacy, LLC,*

    72 F. 4th 365 (1st Cir. 2023) .............................................................................11, 21, 22

*Whitmire v. Terex Telelect, Inc.,*

    390 F. Supp. 2d 540 (E.D. Tex. 2005).........................................................................18

*Wrenn v. G.A.T.X. Logistics, Inc.,*

    73 S.W.3d 489 (Tex. App. 2002)..................................................................................16

**Other Authorities**

Tex. Civ. Prac. & Rem. Code. § 41.003 .............................................................................27

**Rules**

Fed. R. Civ. P. 12.............................................................................................................7, 8

Fed. R. Civ. P. 15.............................................................................................................27

**Treatises**

Restatement (Second) of Torts § 448 (1965) ....................................................................14

## I.    INTRODUCTION

Plaintiffs' well-pleaded claims arise from Defendants Planned Administrators Inc.'s ("PAI") and Southwest Water Company's ("SWC") (collectively, "Defendants") failure to adequately protect the confidential protected health information ("PHI") and personally identifiable information ("PII") of Plaintiffs and Class Members. This sensitive data—including names, dates of birth, Social Security numbers, and health information (collectively, "Private Information")—was provided by Defendants to VeriSource Services, Inc. ("VSI"), a third-party provider of benefits administration and data management services. Subsequently, cybercriminals accessed and exfiltrated this Private Information from VSI's servers in a massive and preventable data breach that occurred on or around February 27, 2024 ("Data Breach").

The Second Amended Consolidated Class Action Complaint ("Complaint" or "Compl.") (ECF No. 70) plausibly alleges Defendants failed to safeguard Plaintiffs' and Class Members' Private Information by negligently entrusting it to VSI without ensuring that appropriate data security measures were in place. As a result, Defendants were negligent, breached contractual obligations, and were unjustly enriched. Plaintiffs have more than met their burden at the pleading stage. Accordingly, Defendants' Motion to Dismiss ("MTD") (ECF No. 77) must be DENIED.

## II.    FACTUAL BACKGROUND

### A.  Defendants Collect Private Information.

VSI provides third-party employment and benefit enrollment, administration, and data management services in connection with employer and self-funded plans. (Compl., ¶

1

3). Defendants utilized VSI's benefit administration and data management services. (*Id.* ¶ 4). As part of their business, Defendants collect their employees' and their employees' dependents' Private Information, including that of Plaintiffs and Class Members. (*Id.* ¶ 5). Businesses that collect consumers' Private Information—like Defendants—and provide this information to vendors and/or independent contractors—like VSI—owe the individuals to whom the information relates a duty to ensure that the vendor and/or independent contractor utilizes and adopts reasonable measures to protect the Private Information from disclosure and theft and to keep it safe and confidential. (*Id.* ¶ 9). This duty arises under contract, statutes, common law, and industry standards because it is foreseeable that hackers with nefarious intentions will target the Private Information and use it to harm the victims. (*Id.*).

The possibility of a cyberattack and the potential for improper disclosure of Plaintiffs' and Class Members' Private Information if inadequate data security was used by a vendor and/or independent contractor was a known risk to Defendants. (*Id.* ¶ 11). Thus, Defendants knew that if they failed to select a vendor and/or independent contractor with adequate data security, Plaintiffs' and the Class's Private Information would be left in a dangerous and vulnerable condition. (*Id.*).

**B. Defendants Breached Duties Owed to Plaintiffs and the Class.**

Defendants failed to adequately protect Plaintiffs' and Class Members' Private Information by failing to ensure the vendors and/or independent contractors it utilized—VSI—implemented industry standard data security procedures, practices, and protocols to protect Plaintiffs' and Class Members Private Information from hackers. (*Id.* ¶ 15).

2

Specifically, Defendants breached their duties by: (i) failing to ensure VSI designed, implemented, monitored, and maintained reasonable network safeguards against foreseeable threats; (ii) failing to ensure VSI designed, implemented, and maintained reasonable data retention policies; (iii) failing to ensure VSI adequately trained or oversaw its employees regarding data security; (iv) failing to ensure VSI complied with industry standard data security practices; (v) failing to warn Plaintiffs and Class Members of VSI's inadequate data security practices; (vi) failing to ensure VSI encrypted or adequately encrypted the Private Information that was stored on VSI's network server; (vii) failing to ensure VSI had systems or processes in place to recognize or detect that VSI's network had been compromised and accessed; (viii) failing to ensure VSI utilized widely available software able to detect and prevent this type of attack; and (ix) failing to ensure VSI otherwise adequately secured the Private Information of Plaintiffs and the Class using reasonable and effective data security procedures free of foreseeable vulnerabilities and data security incidents. (*Id.* ¶ 17). Had Defendants ensured VSI implemented reasonable cybersecurity measures ***prior*** to utilizing VSI's services, Plaintiffs and Class Members would not have suffered the injuries they allege. (*Id.* ¶ 13).

### C. Plaintiffs' Injuries are Substantial.

As a direct and proximate result of VSI's inadequate data security—and Defendants' failure to audit or verify the integrity of VSI's data security practices— Plaintiffs' and Class Members' Private Information was accessed and acquired by a notorious cybercriminal ransomware group known as "BlackSuit." (*Id.* ¶¶ 19, 99). By virtue of Defendants' negligence, Defendants injured approximately three to four million

of their current and/or former employees (and/or their dependents) in the Data Breach via the exposure of their Private Information. (*Id.* ¶ 575). Such injuries include: (i) monetary losses; (ii) mitigation efforts; (iii) emotional distress; (iv) exposure and theft of their Private Information; (v) damages to and diminution in the value of their Private Information; (vi) spam; (vii) an increased risk of identity theft and fraud; (viii) misuse of their Private Information; (ix) publication of their Private Information on the dark web; and (x) loss of privacy. A chart summarizing Plaintiffs' injuries is included below:

| Plaintiff | Injury |
|---|---|
| Clarke | • Mitigation efforts (approx. 100 hours) (¶ 258)[1]<br>• Spam (¶ 262)<br>• Emotional distress (¶ 263) |
| Sanchez | • Mitigation efforts (approx. 100 hours) (¶ 268)<br>• Spam (¶ 272)<br>• Emotional distress (¶ 273) |
| Wagner | • Private Information found on the dark web (¶ 280)<br>• Mitigation efforts (¶ 277)<br>• Spam (¶ 282)<br>• Emotional distress (¶ 283) |
| Almeda | • Mitigation efforts (¶ 288)<br>• Emotional distress (¶ 293)<br>• Numerous fraudulent attempts to his credit cards (¶ 297)<br>• Spam (¶ 298–99) |
| Bacchus | • Mitigation efforts (¶ 306)<br>• Emotional distress (¶¶ 310–11)<br>• Spam (¶ 315) |
| Bueno | • Mitigation efforts (¶ 322)<br>• Emotional distress (¶ 327)<br>• Spam (¶¶ 331–32) |
| Davis | • Mitigation efforts (¶ 339)<br>• Emotional distress (¶ 344)<br>• Fraudulent transactions (¶ 349)<br>• Linked to an FSA account with personal |

---

[1] Citations refer to paragraphs in Plaintiffs' Complaint.

4

| | |
|---|---|
| | information that is false (¶ 350)<br>• Suspicious inquiry on credit report (¶¶ 348, 351)<br>• Spam (¶ 352) |
| Diggs | • Mitigation efforts (¶ 359)<br>• Emotional distress (¶ 364)<br>• Fraudulent attempts to use credit cards (¶ 368)<br>• Spam (¶ 369) |
| Falcon | • Mitigation efforts (¶ 376)<br>• Emotional distress (¶ 381)<br>• Fraudulent attempt to open a bank account (¶ 385)<br>• Spam (¶¶ 386–87) |
| Farley | • Mitigation efforts (¶ 394)<br>• Emotional distress (¶ 399)<br>• Spam (¶ 403) |
| Fazio | • Mitigation efforts (¶ 410)<br>• Emotional distress (¶ 415)<br>• Private Information found on dark web (¶ 419)<br>• Spam (and forced to change phone number) (¶¶ 420–21) |
| Gill | • Mitigation efforts (¶ 428)<br>• Emotional distress (¶ 433)<br>• Spam (¶ 437) |
| Knights | • Mitigation efforts (¶ 444)<br>• Emotional distress (¶ 449)<br>• Fraudulent tax filing (¶ 453)<br>• Fraudulent charge (¶ 454)<br>• Spam (¶ 455) |
| Popoola | • Mitigation efforts (¶ 462)<br>• Emotional distress (¶ 467)<br>• 13 notifications that Private Information is on dark web (¶ 471)<br>• Unsolicited messages seeking account information (¶ 472)<br>• Spam (¶ 473) |
| Touchton | • Mitigation efforts (¶ 480)<br>• Emotional distress (¶ 485)<br>• Spam (¶ 489) |
| West | • Mitigation efforts (¶ 496)<br>• Emotional distress (¶ 501)<br>• Notified Private Information is on dark web (¶ 505)<br>• Spam (¶ 506) |

5

| White | • Mitigation efforts (¶ 513)<br>• Emotional distress (¶ 518)<br>• Multiple fraudulent loan applications (¶ 522)<br>• Spam (¶ 523) |
|---|---|
| Williams | • Mitigation efforts (¶ 530)<br>• Emotional distress (¶ 535)<br>• Received communications for fraudulent accounts/plans (¶ 539)<br>• Spam (¶ 540) |
| Holcomb | • Mitigation efforts (over 20 hours) (¶ 547)<br>• Emotional distress (¶ 550) |
| Hendricks | • Mitigation efforts (over 15 hours) (¶ 555)<br>• Spam (¶ 559)<br>• Emotional distress (¶ 560) |
| Wheaton | • Mitigation efforts (over 10 hours) (¶ 565)<br>• Spam (¶ 569)<br>• Emotional distress (¶ 570) |
| **Common Injuries** | • Loss of privacy (¶ 24(g))<br>• Diminution in value of Private Information (¶¶ 238–45)<br>• Imminent risk of identity theft and fraud (¶¶ 198–231)<br>• Loss of Benefit of the Bargain (¶¶ 251–53) |

SWC and PAI limit their Motion to Dismiss to cherry-picked Plaintiffs—Clarke, Sanchez, Holcomb, Hendricks, and Wheaton—claiming these are the only Plaintiffs who allege that VSI obtained their Private Information from SWC or PAI. (MTD at p. 1). However, SWC and PAI fail to acknowledge that Plaintiffs overtly allege "Plaintiffs and Class Members were required to entrust their sensitive, non-public Private Information to one or more Defendants and by extension to VSI." (Compl., ¶ 6). Nonetheless, SWC and PAI are fully capable of determining from their own records which Plaintiffs' Private Information they possessed at the time of the Data Breach, because notice letters were sent to victims identified through those very records. (*Id.* ¶ 583). By PAI and SWC asserting

that they "specifically address only those Plaintiffs who plead any connection to SWC and PAI," (MTD at p. 2)—namely Clarke, Sanchez, Holcomb, Hendricks, and Wheaton— SWC and PAI necessarily concede that the remaining Plaintiffs have standing under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and that their claims are not subject to dismissal under Rule 12(b)(6).

## III.   LEGAL STANDARD

Defendants seek dismissal of Plaintiffs' claims on two grounds: (i) lack of standing under Rule 12(b)(1); and (ii) failure to state a claim upon which relief can be granted under Rule 12(b)(6). Neither argument merits granting Defendants' MTD.

To establish Article III standing, three requirements must be met: (i) an injury that is "concrete, particularized and actual or imminent;" (ii) that is "fairly traceable to the challenged action;" and (iii) that is "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted). Further, "[o]nly one party with standing is required to establish Article III jurisdiction." *Louisiana v. Centers for Disease Control & Prevention*, No. 6:22-CV-00885, 2022 WL 1604901, at *10 (W.D. La. May 20, 2022).

In deciding a Rule 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). "To survive a Rule 12(b)(6)

7

motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim should proceed when it is "plausible," which means that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Ultimately, however, "a motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citation omitted).

## IV.    ARGUMENT

### A.  Plaintiffs' Claims are Not Subject to Dismissal Under Rule 12(b)(1).

#### 1.  Plaintiffs Allege Numerous Concrete Injuries.

Plaintiffs have standing to sue based on the following injuries: (i) increased risk of future harm; (ii) loss of privacy; (iii) mitigation efforts; and (iv) emotional distress.

***Imminent Risk of Future Harm.*** Defendants contend that Plaintiffs must allege actual misuse of their Private Information to establish an imminent risk of harm, relying heavily on *Logan v. Marker Grp., Inc.*, No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024). However, Texas courts have grown increasingly critical of *Logan*, recognizing that "other Circuit Courts have begun to rely on specific factors in determining whether an injury is imminent versus hypothetical, specifically in the data breach context." *Bruno v. Donohoe as Tr. of Texas Med. Liab. Tr.*, 754 F. Supp. 3d 737, 745 (W.D. Tex. 2024); *see also Cabezas v. Mr. Cooper Grp. Inc.*, No. 3:23-CV-2453-N, 2025 WL

8

2053287, at *3–7 (N.D. Tex. July 22, 2025). Indeed, courts across the Northern, Western, and Eastern Districts of Texas have adopted the "*McMorris* factor test" to evaluate standing in the data breach context. *See Cabezas*, 2025 WL 2053287, at *4 (adopting the test after noting it had already been accepted in the Eastern and Western Districts); *Hawkins v. Scout Energy Mgmt., LLC*, No. 3:24-CV-01545-N, 2025 WL 2244327, at *3 (N.D. Tex. Aug. 5, 2025) (reaffirming adoption of the *McMorris* test); *Smith v. Am. Pain & Wellness, PLLC*, 747 F. Supp. 3d 989, 999–1003 (E.D. Tex. 2024) (similar); *Hays v. Frost & Sullivan, Inc.*, 2024 WL 4052741, at *3–8 (W.D. Tex. 2024). Defendant also relies on *Perlaki v. J.B. Poindexter & Co.*, No. 4:24-CV-01649, 2025 WL 754503 (S.D. Tex. Mar. 10, 2025), but this case also fails to utilize the widely accepted *McMorris* test. The Southern District of Texas remains the only district in Texas that has yet to adopt this widely accepted framework—and it should choose to do so here.

The *McMorris* test considers: (i) whether the breach resulted from a targeted attack intended to obtain plaintiffs' data; (ii) whether some portion of the compromised dataset has already been misused, even if the plaintiffs' own data has not yet been; and (iii) whether the exposed data is inherently likely to subject plaintiffs to ongoing risk of identity theft or fraud. *Cabezas*, 2025 WL 2053287, at *4 (citing *McMorris v. Carlos Lopez & Assocs.*, 995 F.3d 295, 301–02 (2d Cir. 2021) (cleaned up).

Under the *McMorris* test, Plaintiffs sufficiently allege an imminent risk of future harm, establishing a concrete harm for Article III standing purposes. As to the first factor, Plaintiffs assert their "Private Information was targeted, accessed, and stolen by BlackSuit in the Data Breach." (Compl., ¶ 99). As for the second factor, several Plaintiffs allege actual

9

misuse of their data, including incidents of fraud and discovery of their Private Information on the dark web. (Section II(B), *supra*). With respect to the third factor, Plaintiffs' Complaint details the ongoing and perpetual risk of fraud and identity theft stemming from the exposure of their Private Information—particularly given that their Social Security numbers were compromised in the Data Breach. (Compl., ¶¶ 198–231). Accordingly, Plaintiffs readily satisfy the *McMorris* factors and establish a concrete injury based on the imminent risk of future harm.

***Loss of Privacy.*** Additionally, Plaintiffs' loss of privacy constitutes a concrete injury for standing purposes. Plaintiffs allege their Private Information was exposed to the cybercriminal group—BlackSuit—resulting in a loss of privacy. (*Id.* ¶¶ 99, 197). Courts have repeatedly recognized that privacy loss stemming from a data breach qualifies as a concrete injury for standing purposes. *See, e.g.*, *Duffy v. Lewis Bros. Bakeries, Inc.*, 760 F. Supp. 3d 704, 716 (S.D. Ind. 2024); *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 286 (2d Cir. 2023) ("[E]xposure of [plaintiff's] private information—including her SSN and other PII—to an unauthorized malevolent actor ... falls squarely within the scope of an intangible harm the Supreme Court has recognized as 'concrete.'"). This is because such exposure closely parallels the common-law tort of public disclosure of private facts. *See Smith*, 747 F. Supp. 3d at 1002. Indeed, the Supreme Court found in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) that the "the disclosure of private information was an intangible harm traditionally recognized as providing a basis for suit." *Smith*, 747 F. Supp. 3d at 1002. Accordingly, Plaintiffs' alleged loss of privacy amounts to a concrete injury.

10

***Mitigation Efforts and Emotional Distress.*** Courts have also found that when defendants "encourage[] Named Plaintiffs to take precautions due to the Data Breach" and the plaintiffs expend time and/or money protecting themselves from identity theft, that the time and/or money spent responding to a data breach constitutes an injury sufficient to confer standing. *Id.* at 1002; *Webb v. Injured Workers Pharmacy, LLC*, 72 F. 4th 365, 377 (1st Cir. 2023) ("[T]ime spent responding to a data breach can constitute a concrete injury sufficient to confer standing, at least when that time would otherwise have been put to profitable use."). This is precisely the case here. Here, Plaintiffs were advised "remain vigilant by reviewing [] account statements and monitoring free credit reports closely for errors and by taking other steps appropriate to protect accounts, including promptly changing passwords" and each Plaintiff alleges spending time responding to the ramifications of the Data Breach. (Compl., ¶ 277; Section II(B), *supra*).

Moreover, where a credible risk of future harm has been established—as is the case here—emotional distress can serve as a concrete injury for standing purposes. *See, e.g.*, *Hawkins*, 2025 WL 2244327, at *5 ("However, where courts have already established a risk of future harm, emotional distress and mitigation costs, "when coupled with the risk of harm ... is a concrete injury sufficient to confer standing.") (citation omitted); *Cabezas*, 2025 WL 2053287, at *7 (same). Even *Perlaki*, 2025 WL 754503, at *6—which Defendants rely on—holds that victims of a data breach "may pursue damages for the emotional distress…." In sum, Plaintiffs allege multiple concrete injuries that confer standing.

11

**2.  Plaintiffs' Injuries are Traceable to Defendants.**

Next, Defendants argue Plaintiffs cannot establish standing because they fail to plausibly allege that their injuries are fairly traceable to the Data Breach. This argument is unavailing.

"Courts have determined that the plaintiff's burden is relatively modest at the pleading stage of the litigation." *Hawkins*, 2025 WL 2244327, at *6 (internal quotation marks and citation omitted). "In data breach cases, the pleading standard for causation can be met where plaintiffs have pled (1) the defendant failed to secure his private information; (2) its network was subsequently hacked; (3) the plaintiff's private information was stolen by hackers; and (4) the plaintiff became the victim of [the pled injury in fact]." *Cabezas*, 2025 WL 2053287, at *8 (internal quotation marks and citation omitted). In accordance with this framework, Plaintiffs specifically allege that Defendants failed to secure and safeguard their Private Information by failing to choose a vendor/independent contractor with adequate data security, that their Private Information was stolen by BlackSuit from VSI's network, and that they have since become a victim of the numerous concrete injuries established above. (Compl., ¶¶ 12, 99). At the motion to dismiss stage, these allegations are sufficient to allege a plausible nexus between the Data Breach and their injuries. *Cabezas*, 2025 WL 2053287, at *8 (finding traceability where the plaintiffs alleged the defendants failed to secure their private information, the plaintiffs' private information was seized in a ransomware attack, the private information seized was highly sensitive and could be used for fraud); *Hawkins*, 2025 WL 2244327, at *6 (same); *Smith*, 747 F. Supp. 3d at 1003 ("Here, Named Plaintiff's alleges that American Pain's actions led to the

12

disclosure of their private information. Thus, the Court is satisfied that Named Plaintiff's injury is fairly traceable to American Pain's alleged conduct at this stage."). Accordingly, Plaintiffs have adequately alleged traceability, and dismissal should be denied.

### 3. Plaintiffs' Injuries are Redressable.

Lastly, Defendants claim Plaintiffs fail to allege redressability because they "fail to allege any quantifiable damage or loss." (MTD at p. 10). This is incorrect. Plaintiffs seek both monetary damages that would compensate Plaintiffs for the harm suffered—including costs incurred from identity theft, fraud, credit monitoring, and the loss of privacy—and injunctive relief that would mitigate the risk of future harm. (Compl., ¶¶ 24, 26, 246–50, 673). This is more than sufficient to establish redressability at the pleading stage. *Smith*, 747 F. Supp. 3d at 1003 ("And Named Plaintiffs have alleged that monetary relief would compensate them, which renders their injury redressable.").

### B. Plaintiffs' Claims are Not Subject to Dismissal Under Rule 12(b)(6).

### 1. Plaintiffs' Negligence, Negligence Per Se, and Negligent Hiring Claim is Sound.

#### i. *Defendants had a Common Law Duty to Ensure Plaintiffs' Private Information was Protected Against Foreseeable Threats.*

"A duty arises when a person's conduct poses a foreseeable risk to another that could be avoided by the exercise of ordinary care." *Mendez v. Caterpillar Inc.*, No. SA-09-CA-978-XR, 2011 WL 6999659, at *14 (W.D. Tex. Dec. 16, 2011). To decide whether a duty exists, Courts "consider[] several factors, including the risk, foreseeability, and the

13

likelihood of injury versus the social utility of the actor's conduct" and "the defendant's burden in guarding against that injury." *Washington v. U.S. Dep't of Hous. & Urb. Dev.*, 953 F. Supp. 762, 773 (N.D. Tex. 1996). "If a criminal's conduct is a foreseeable result of the prior negligence of a party, the criminal act may not excuse that party's liability." *Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 462 (Tex. App. 2008) (citing *Phan Son Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999)). To impose liability, a plaintiff "must show both that the defendant committed negligent acts and that it knew or should have known that, because of its acts, the crime (or one like it) might occur." *Id.* (citing Restatement (Second) of Torts § 448 (1965)).

Defendants only muster up two arguments against finding a duty here: (i) it has no duty to protect against criminal conduct; and (ii) it could not have foreseen that its vendor would be subject to a cyberattack. (MTD at pp. 18–19). However, Texas law unequivocally imposes a duty to safeguard against foreseeable criminal threats, and it was readily foreseeable that an entity with inadequate data security—such as VSI—would be the subject of a cyberattack designed to acquire Plaintiffs' Private Information. (Compl., ¶ 11); *Haney v. Charter Foods N., LLC*, 747 F. Supp. 3d 1093, 1111 (E.D. Tenn. 2024) ("The risk of a data breach is a risk of great harm, and companies are aware—or at least should be aware—of the scale and harm a data breach can cause. Data breaches have affected many large businesses for years and are only increasing in frequency."); *In re ESO Sols., Inc. Breach Litig.*, No. 1:23-CV-1557-RP, 2024 WL 4456703, at *9 (W.D. Tex. July 30, 2024); *Hawkins*, 2025 WL 2244327, at *8 ("Plaintiffs have alleged that Scout has a duty to safeguard PII entrusted to it because improperly safeguarding data poses a foreseeable

14

risk that could be avoided by the exercise of ordinary care."). Accordingly, both the alleged facts and the controlling law require the finding of Defendant's duty to safeguard Plaintiffs' Private Information.

## ii.    *The Scope of Defendants' Duty to Safeguard Private Information is Defined, in part, by HIPAA and the FTC Act.*

"Negligence per se is a tort theory whereby courts use statutes or regulations to define the standard of reasonably prudent conduct." *Hackett v. G.D. Searle & Co.*, 246 F. Supp. 2d 591, 594 (W.D. Tex. 2002). The doctrine of negligence per se does not impose a duty where none exists at common law but rather the "statute's role is merely to define more precisely what conduct breaches that duty." *Holcombe v. United States*, 388 F. Supp. 3d 777, 801 (W.D. Tex. 2019) (citation omitted). "The pertinent question is whether the duties set forth in the federal law are analogous to those set forth in local tort law." *Johnson v. Sawyer*, 47 F.3d 716, 729 (5th Cir. 1995). Thus, the fact that the FTC Act nor HIPAA provide a private right of action is irrelevant because the doctrine of negligence *per se* does not impose a **source** of duty, it simply **clarifies** the standard of care for an existing duty. *See e.g.*, *Merrell v. 1st Lake Props., Inc.*, 717 F. Supp. 3d 512, 520 (E.D. La. 2024) ("Section 5 of the FTC Act is an appropriate authority on the scope of a defendant's duty under Louisiana negligence law in data breach cases, irrespective of the absence of a private right of action under the FTC Act."); *In re ESO Sols., Inc. Breach Litig.*, 2024 WL 4456703, at *11 ("[W]hile ESO's violations of HIPAA or the FTC Act may speak to the relevant standard of care, they cannot show an automatic breach of duty to establish

15

negligence per se."). Here, because Plaintiffs have established Defendants' common law duty, they may rely on the FTC Act and HIPAA to define the contours of that duty.

### iii.    *Defendants had a Duty to Ensure VSI Implemented Reasonable Data Security.*

"[A]n employer is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others. *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App. 2002). Because this claim is essentially a claim sounding in negligence, courts analyze it under the same elements, *i.e.*, "duty, a breach of that duty, and damages proximately caused by the breach." *Id*. As with simple negligence, "[b]oth of the elements of duty and proximate cause required to establish [a] claim of negligent hiring and supervision are premised on foreseeability. *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 496 (Tex. App. 2002).

Defendants argue for dismissal of this claim under the erroneous premise that SWC and PAI were unaware of VSI's inadequate cybersecurity protections and thus cannot be held accountable for VSI's negligence. (MTD at pp. 20–21). However, Defendants' argument misapprehends Plaintiffs' allegations, which do not seek to impose vicarious liability, but rather seek to hold Defendants accountable for failing to ensure that "VSI implemented reasonable cybersecurity measures ***prior*** to utilizing VSI's services— including by ensuring that VSI implemented adequate safeguards for initial access, encryption or redaction of personal data elements, and sufficient logging, monitoring, and alerting tools to detect unauthorized activity." (Compl., ¶ 13). These allegations are

16

squarely in line with the principles of negligent hiring and supervision which require that employers verify the suitability of the prospective employee to carry out the roles delegated to them prior to retaining the employee. *Morris*, 78 S.W.3d at 49 ("A motor carrier has a duty to take steps to prevent injury to the driving public by determining the competency of a job applicant to drive one of its trucks.").

Thus, it is not the case, as Defendants argue, that an employer can only be held liable if it had affirmative notice of the employee's unfitness, rather the employer has an affirmative duty to vet that employee's qualifications to ensure they can adequately discharge their duties. Notably, Defendants do not argue that it was not foreseeable that the hiring of a third-party without proper data security would lead to injury to Plaintiffs if their Private Information was stolen, only that they themselves did not have foreknowledge of VSI's poor data security practices. (*See* MTD at pp. 19–21). However, the lack of knowledge of VSI's poor data security was precisely because Defendants ***failed to inquire*** in the first place, establishing the element of breach for Plaintiffs' negligent hiring claim.

Many Courts have found that entities who provide information to an entity such as VSI have a duty to ensure adequate data security measures are in place. *See, e.g.*, *Carr v. Oklahoma Student Loan Auth.*, No. CIV-23-99-R, 2023 WL 6929850, at *4–5 (W.D. Okla. Oct. 19, 2023) (refusing to dismiss negligent hiring and supervision claim in data breach case); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *15 (D.N.J. Dec. 16, 2021) ("Defendants owed Plaintiffs a duty of care to protect their Personal Information from foreseeable risks by taking reasonable precautions once they collected Plaintiffs information. That duty did not vanish when Defendants chose

17

to contract with AMCA."); *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1186 (M.D. Fla. 2022) (the court found the defendant and the vendor "owed a duty to ensure that [their subcontractor] "had the appropriate technical safeguards in place").

### iv.    *Plaintiffs Allege Proximate Causation.*

"Proximate cause is usually a mixed question of law and fact for the jury to determine." *Whitmire v. Terex Telelect, Inc*., 390 F. Supp. 2d 540, 558 (E.D. Tex. 2005). "[L]ike any other ultimate fact issue," proximate cause "may be established by circumstantial evidence." *Id.* (quotation marks omitted) (quoting *Forrest v. Vital Earth Res*., 120 S.W.3d 480, 490 (Tex. App. 2003)). "Causation must be based on a reasonable probability" but "[a]bsolute certainty . . . is not required." *Forrest*, 120 S.W.3d at 490. "Nor must the plaintiff exclude every other possibility." *Id.* (citations omitted). In data breach cases involving allegations of theft of Private Information, courts routinely find that damages associated with actual and potential identity theft are foreseeable and attributable to the breach for purposes of alleging proximate cause. *See, e.g.*, *In re ESO Sols., Inc. Breach Litig.*, 2024 WL 4456703, at *10 (finding "little genuine doubt" data breach "was a 'substantial factor'" in causing "mitigation damages, distress, and loss of privacy").

Here, Defendants appear to argue they only "facilitated the condition that caused Plaintiffs' alleged damages" and thus are not the proximate cause of their injuries. (MTD at p. 21). However, Plaintiffs plainly allege Defendants were aware of targeted data breaches, knew of the consequences to Plaintiffs and the Class if their Private Information was stolen, and failed to ensure that VSI implemented adequate data security measures. (Compl., ¶¶ 9, 11, 13, 15, 17, 115, 133, 135–38). The foreseeable and probable result of

18

Defendants' failure to ensure VSI was adequately positioned to protect the Private Information Defendants collected from Plaintiffs are the precise harms suffered by Plaintiffs. *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 908 (N.D. Cal. 2024), *motion to certify appeal granted,* No. 21-CV-02470-EMC, 2025 WL 1866348 (N.D. Cal. July 7, 2025) ("[I]t is foreseeable that companies dealing with PII must implement adequate security practices and must exercise reasonable care in ascertaining which subcontractors/vendors and employees they choose to work with, especially when sharing customers' PII with said vendors."). Accordingly, this is not a case where Defendants' negligence was incidental to Plaintiffs' injuries, rather, Defendants' negligence in ensuring that proper safeguards were implemented by VSI was a ***direct cause*** of those injuries. *See e.g.*, *Hayes v. Locke Supply Co.*, 724 F. Supp. 3d 609, 614 (E.D. Tex. 2024) ("[T]he circumstances in this case [] do not give rise to proximate causation between Hayes and Rominu's conduct and their injuries because Hayes and Rominu's injuries were not a foreseeable result of their allegedly negligent conduct.").

> ### v.    *The Economic Loss Doctrine Does Not Bar Plaintiffs' Claims.*

"[T]he economic loss rule does not bar tort claims 'when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit.'" *Cabezas*, 2025 WL 2053287, at *11 (citation omitted); *Hawkins*, 2025 WL 2244327, at *9 (same). Texas law "does not hold that the existence of a contract between two parties categorically precludes one of the parties from bringing a negligence suit against the other." *Bruce Foods Corp. v. Tex. Gas Serv.*, EP-13-

19

CV-231-KC, 2014 WL 652312, at \*9 (W. D. Tex. Feb. 19, 2014). "Texas courts follow '[t]he economic loss rule [which] generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists *only* of the economic loss of a contractual expectancy." *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 292–93 (5th Cir. 2016) (emphasis added) (citation omitted). "If the injury 'would give rise to liability *independent of the fact that a contract exists between the parties*, the plaintiff's claim may also sound in tort." *Id.* at 292 (emphasis added) (citation omitted) (economic loss rule did not bar negligence claim for bodily injury against security company, notwithstanding that plaintiff contracted with security company for alarm servicing and installation, where company had implied common law duty to provide a working alarm system). Here, because Defendants had common law and statutory duties to safeguard the Private Information *independent* of any contractual obligations, the economic loss doctrine does not apply.

### 2. Plaintiffs Allege Cognizable Damages.

Defendants also argue for dismissal of Plaintiffs' claims by insisting that Plaintiffs have alleged no injury for which damages are available. (MTD at pp. 11–15). However, for the same reason Plaintiffs have standing to pursue their claims, they may seek redress through damages. *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) ("To say that the plaintiffs have standing is to say that they have alleged injury in fact, and if they have suffered an injury then damages are available[.]"); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1211 (S.D. Fla. 2022)

20

("Plaintiffs' alleged injuries constitute injuries in fact sufficient to satisfy claims for damages, and no further discussion of damages is warranted").

Here, Plaintiffs have sufficiently alleged both actual misuse of their Private Information and the corresponding imminent risk of fraud and identity theft. (*See* Compl., ¶¶ 280, 419, 471, 505 (dark web publication), 297, 349, 368 (fraudulent charges), 348, 351 (unauthorized credit activity), 350, 368, 385, 472, 539 (unauthorized accounts), 453 (fraudulent tax filings), and 522 (fraudulent loan applications)). Given that such allegations undoubtedly support a finding of actual and imminent risk of future injury, Plaintiffs are entitled to damages arising from that risk. *Hawkins*, 2025 WL 2244327, at *8 ("Plaintiffs have sufficiently alleged that they suffered damages. They assert that as a result of the data breach, their PII has been sold or exposed on the dark web, and they have suffered an increased risk of future harm."); *Hays*, 2024 WL 4052741, at *8 (holding that "the future risk of imminent identity theft and the intangible harm associated with the posting of [] PII on the dark web [are] each sufficient to confer standing to pursue damages")

Moreover, "[t]hat at least some information stolen in a data breach has already been misused also makes it likely that other portions of the stolen data will be similarly misused." *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 376 (1st Cir. 2023) (citing to *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 301 (2d Cir. 2021) ("courts have been more likely to conclude that plaintiffs have established a substantial risk of future injury where they can show that at least some part of the compromised dataset has been misused—even if plaintiffs' *particular* data subject to the same disclosure incident has not yet been affected."). Accordingly, Plaintiffs have alleged that they

21

reasonably spent time to mitigate the consequences of the Data Breach in response to the real risk of fraud and identity theft and "the time and money spent trying to mitigate the consequences of the data breach—with respect to which damages are unquestionably capable of reasonable proof." *Bohnak*, 79 F.4th at 290; *Webb*, 72 F.4th at 377 (same).

Plaintiffs are also entitled to recover damages for the mental suffering they have experienced as a result of the violation of their privacy rights. *See Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 875 (W.D. Tex. 2016) (recognizing that invasion of privacy is a concrete harm). As the Texas Supreme Court articulated:

> …[T]he invasion of privacy is a willful tort which constitutes legal injury. Damages for mental suffering are recoverable without the necessity of showing actual physical injury in a case of willful invasion of the right of privacy because the injury is essentially mental and speculative, not actual harm done to the plaintiff's body. The right of privacy is a right distinctive in itself and not incidental to some other recognized right for breach of which an action for damages will lie. A violation of the right is a tort.

*Billings v. Atkinson*, 489 S.W.2d 858, 861 (Tex. 1973). Accordingly, Plaintiffs have established cognizable damages to remedy the invasion to their privacy rights and the emotional distress arising from the disclosure of their Private Information. *In re ESO Sols., Inc. Breach Litig.*, 2024 WL 4456703, at *6 ("a plaintiff can sue for damages if the risk materializes or causes a separate injury-in-fact, *such as emotional distress*" because "those are suits based on those injuries, not the risk itself.") (quoting *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 824 (5th Cir. 2022).

In addition to injuries caused by the risk of harm, lost time, loss of privacy, and emotional distress, Plaintiffs have suffered concrete injuries from the lost or diminished value of their Private Information. Indeed, "the growing trend across courts that have

22

considered this issue is to recognize the lost property value of this information." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020). This is because "the value of consumer [Private Information] is not derived solely (or even realistically) by its worth in some imagined marketplace where the consumer actually seeks to sell it to the highest bidder …." *Id.* at 462; *see also In re Mednax Servs.*, 603 F. Supp. 3d at 1204 ("[P]laintiffs need not reduce their … PII to terms of dollars and cents in some fictitious marketplace where they offer such information for sale to the highest bidder.") (collecting cases). Rather, "the Data Breach devalued Plaintiffs' PII by interfering with their fiscal autonomy." *Smallman v. MGM Resorts Intl.*, 638 F. Supp. 3d 1175, 1191 (D. Nev. 2022). This Court should similarly recognize the inherent value of Plaintiffs' Private Information in that it allows them to verify their identities, apply for employment, and secure financial products at favorable rates. Once the confidential nature of this information is destroyed, so too is a consumer's ability to use it to their own benefit.

### 3. Plaintiffs State a Claim for Breach of Implied Contract.

The elements of a breach of contract claim are "(1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach." *Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 834 (Tex. App.—Dallas 2009, no pet.). Like an express contract, an implied contract requires "(1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, [and] (4) each party's consent to the terms[.]" *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ). "[T]he element of mutual assent can be inferred from the circumstances of the transaction." *Id.* (citing *Haws & Garrett Gen.*

23

*Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972)). "Mutual assent can arise from the parties' acts and conduct from which one party can 'reasonably draw the inference of a promise.'" *Id.* (citation omitted).

Many federal courts have held that an implied contract to safeguard sensitive data can exist where the defendant requires provision of that data to conduct a transaction. *Logan*, 2024 WL 3489208, at \*22 (citing cases). As such, "it is enough to allege that there was an explicit or implicit contract for data security, that plaintiffs placed value on that data security, and that Defendants failed to meet their representations about data security." *In re Marriott Int'l*, 440 F. Supp. 3d at 466. Pertinent here, "[w]hen an employer requires an employee to submit their sensitive personal information, the employee therefore has a reasonable expectation that the employer will take reasonable care not to place their personal data at unnecessary risk of exposure." *In re Waste Mgmt. Data Breach Litig.*, No. 21cv6147, 2022 WL 561734, at \*4 (S.D.N.Y. Feb. 24, 2022); *see also Perry v. Bay & Bay Transportation Servs., Inc.,* 650 F. Supp. 3d 743, 757 (D. Minn. 2023) ("Bay & Bay provided consideration by promising to consider Perry for employment, while Perry provided consideration by providing valuable property, her PI. By mandating this exchange of information, it is plausible that Bay & Bay made an implied promise to keep the PI secure."); *In re Michaels Stores Pin Pad Litig.*, 830 F.Supp.2d 518, 531–32 (N.D. Ill. 2011) (holding that an implicit contractual relationship existed between plaintiffs and defendant which obligated defendant to protect plaintiffs' financial information).

Here, Plaintiffs—who are current or former employees (or dependents of current or former employees of Defendants)—allege Defendants required them to provide and entrust

24

their Private Information to Defendants as a condition of obtaining services, benefits, and/or employment. (*See* Compl., ¶¶ 5, 255, 265, 544, 552, 562, 618). Plaintiffs also allege they reasonably believed and expected that Defendants "would ensure any vendors and/or independent contractors they selected complied with industry standards and relevant laws and regulations, including the FTC Act, HIPAA, and HITECH," based on Defendants' conduct, including "solicit[ing] and invit[ing] Plaintiffs and Class Members to provide their Private Information as part of Defendants' regular business practices." (*Id.* ¶¶ 623, 625, 626). Plaintiffs allege a "meeting of the minds occurred when Plaintiffs and Class Members agreed to, and did, provide their Private Information to Defendants and agreed Defendants would receive payment for and benefit from, amongst other things, the protection of their Private Information." (*Id.* ¶ 629). As such, this claim is not subject to dismissal.

### 4.  Plaintiffs State a Claim for Unjust Enrichment.

Defendants claim Plaintiffs' unjust enrichment claim fails because Plaintiffs do not demonstrate that Defendants "obtained a benefit by fraud, duress, or the taking of an undue advantage," (MTD at p. 24), but this argument ignores Plaintiffs' allegations. Plaintiffs plainly allege they "conferred a monetary benefit on Defendants," and that Defendants generated revenue from Plaintiffs and Class Members' Private Information," but that Defendants failed to disclose they would be using vendors and/or independent contractors with inadequate data security, thereby enriching themselves by saving the costs they reasonably should have expended on a vendor and/or independent contractor with adequate data security measures and diverting it into their own pockets. (Compl., ¶¶ 657, 658, 660,

662–63). It is unclear how these allegations could be categorized as anything other than "taking undue advantage" of Plaintiffs and the Class. "Defendant has not provided the Court with any authority supporting its argument that Plaintiff[s] cannot plead undue advantage by asserting that Defendant unjustly benefited from shirking its data-security obligations by skimping on security measures and leaving Plaintiff[s] to suffer the consequences." *Hays*, 2024 WL 4052741, at *13. Thus, Plaintiffs' unjust enrichment claim is sound.

### 5. Plaintiffs State a Claim for Declaratory Judgment.

Defendants request dismissal of Plaintiffs' declaratory judgment claim by asserting it is not an independent cause of action. However, this argument is routinely denied in data breach cases. *See e.g.*, *Castillo v. Berry Bros Gen. Contractors Inc.*, No. 6:24-CV-01723, 2025 WL 1062091, at *6 (W.D. La. Apr. 8, 2025); *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 387 (S.D.N.Y. 2024), *motion to certify appeal denied*, No. 24-CV-1565 (JSR), 2024 WL 4307975 (S.D.N.Y. Sept. 26, 2024) (refusing to dismiss declaratory judgment claim as duplicative where such as claim would provide forward looking relief that would preserve Plaintiffs' rights in the future); *see also In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 414–15 (E.D. Va. 2020) (finding allegation of "continued inadequacy of Defendants' security measures" was sufficient to support declaratory judgment claim in data breach case). Plaintiffs seek forward looking relief that is not subsumed by their other claims for relief; therefore, dismissal of this claim improper. (*See* Compl., ¶ 673).

### 6. Plaintiffs' Request for Punitive Damages is Proper.

Next, Defendants request the Court dismiss Plaintiffs' request for punitive damages, but this request is wholly premature at the motion to dismiss stage. "Punitive damages are available when the evidence shows the defendant acted with fraud, malice, or gross neglect." *Fearrington v. Bos. Sci. Corp.*, 410 F. Supp. 3d 794, 808 (S.D. Tex. 2019) (citing Tex. Civ. Prac. & Rem. Code. § 41.003)). Plaintiffs specifically allege that "[t]he acts and omissions of PAI and SWC in negligently hiring, retaining, and/or selecting VSI are such as to show gross negligence and reckless disregard for the safety of others and, therefore, punitive damages are appropriate." (Compl., ¶¶ 118, 690). Granting Defendants' motion now would improperly short-circuit Plaintiffs' ability to develop evidence supporting punitive damages.

### C. Plaintiffs Should be Granted Leave to Amend.

In a classic "kitchen-sink" maneuver, Defendants go as far as to argue that, should Plaintiffs' claims be dismissed, they should not be permitted leave to amend. This request is not only premature but is also contrary to well-settled law. Rule 15(a)(2) makes clear that courts should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fifth Circuit has emphasized that Rule 15 embodies a strong presumption in favor of amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) ("Rule 15(a) requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." (quotations omitted)). Defendants' attempt to cut off

27

Plaintiffs' ability to amend before this Court has even considered the sufficiency of the pleadings is baseless and should be rejected outright.

## V.   CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request the Court DENY Defendants' MTD in its entirety.

Date:  September 3, 2025                                 Respectfully submitted,

*/s/ William B. Federman*
William B. Federman
Tex. Bar No. 00794935
**FEDERMAN & SHERWOOD**
4131 N. Central Expressway
Suite 900
Dallas, Texas 75204
Telephone: (800)-237-1277
Email: wbf@federmanlaw.com

Jeff Ostrow (admitted *pro hac vice*)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Fax: (954) 525-4300
Email: ostrow@kolawyers.com

John J. Nelson (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941
Email: jnelson@milberg.com

***Interim Co-Lead Class Counsel***

28

## CERTIFICATE OF WORD COUNT

I, the undersigned, hereby certify that this Response contains 7,458 words, excluding the table of contents, table of authorities, caption, signature blocks, and certificates. The Court extended Plaintiffs' word limit to 7,500 words for this response via an Order dated July 31, 2025 (ECF No. 75).

*/s/ William B. Federman*

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ William B. Federman*